ELECTRONICALLY FILED
2017 Oct 16 PM 3:02
CLERK OF THE STAFFORD COUNTY DISTRICT COURT
CASE NUMBER: 2017-CV-000022

Gary L. Ayers
FOULSTON SIEFKIN LLP
1551 N. Waterfront Pkwy, Suite 100
Wichita, KS 67206
316.291.9530
gayers@foulston.com

## IN THE TWENTIETH JUDICIAL DISTRICT
## DISTRICT COURT, STAFFORD COUNTY, KANSAS

|  |  |  |
|---|---|---|
| **FREDRICK J. FARMER, D.O.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **vs.** | ) | **Case No.** |
| | ) | |
| **STAFFORD COUNTY HOSPITAL,** | ) | |
| **RICHARD S. CARTER, M.D.,** | ) | |
| **CARTER PROFESSIONAL CARE** | ) | |
| **STAFFORD, LLC; and TODD TAYLOR ,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## PETITION

Plaintiff, for his claims against Defendants, alleges and states as follows:

### Parties

1.     Plaintiff Fredrick J. Farmer, D.O. ("Dr. Farmer") is a resident of Stafford County,

Kansas.

2.     Defendant Stafford County Hospital ("the Hospital") is a county hospital

organized and operated pursuant to K.S.A. 19-4601 et seq., with its principal place of business at

1502 South Buckeye Street, Stafford, Kansas 67578. The Hospital's resident agent is National

1



Registered Agents, Inc. of Kansas ("the Hospital's Resident Agent"). The Hospital's Resident Agent's registered office address is 112 SW 7th Street, Suite 3C, Topeka, Kansas 66603.

3.      Defendant Carter Professional Care Stafford LLC ("the Management Company") is an Oklahoma limited liability company, with its principal place of business at 700 W. 15th Street, Suite 1, Edmond, Oklahoma 73013. The Management Company was organized in Oklahoma on October 12, 2016, and, on November 1, 2016, applied to do business in Kansas as a foreign limited liability company. The Management Company's resident agent is Rob Gale, Esq., with a registered office at 211 N. Main Street, Syracuse, Kansas 67878. In November 2016, the Management Company and the Hospital entered into an agreement giving the Management Company management control of the Hospital.

4.      Upon information and belief, Defendant Richard S. Carter, M.D. ("Dr. Carter") is a resident of Oklahoma. Dr. Carter is the sole owner and managing member of the Management Company.

5.      Todd S. Taylor is the Chief Executive Officer or Administrator of the Hospital, and may be served at the Hospital, 1502 South Buckeye Street, Stafford, Kansas 67578, or at his residence, 114 N. Union Ave, Stafford, KS 67578

### Jurisdiction and Venue

6.      The Court has subject matter jurisdiction over this action insofar as it is a court of general jurisdiction that may grant temporary injunctive relief and appropriate stays to preserve the status quo.

7.      Venue is proper in this Court. The Hospital is located in Stafford County and most of the Hospital's acts and omissions giving rise to this lawsuit occurred in Stafford County,

Kansas. The Management Company, through its agreement with the Hospital, does business in Stafford County and most of its acts and omissions giving rise to this lawsuit occurred in Stafford County, Kansas. Most of Dr. Carter's acts and omissions giving rise to this lawsuit occurred in Stafford County, Kansas.

## Summary of Claims

8.  As described below, Defendants, acting alone and through the Hospital and the Management Company and their respective agents, have violated the Bylaws, Rules and Regulations of the Professional Staff that were properly enacted in 2013 ("the properly enacted Medical Staff Bylaws"), the Hospital's Bylaws, Rules and Regulations ("the Hospital's Bylaws"), federal and state law, and Dr. Farmer's constitutional rights by (A) denying Dr. Farmer his procedural due process hearing and appeal rights prior to reporting to the Kansas Board of Healing Arts ("KBOHA") adverse findings threatening Dr. Farmer's license; and by (B) reporting false and defamatory findings to the KBOHA, again threatening Dr. Farmer's license, in retaliation for Dr. Farmer's actions (i) in refusing to grant hospital privileges where there was no proper basis for granting privileges; and (ii) for Dr. Farmer's bringing his legitimate concerns regarding the Hospital to the Stafford County Commissioners.

## Factual Background

9.  Since 1980, Dr. Farmer has been a licensed physician in the State of Kansas. During his nearly forty years of practice, Dr. Farmer has enjoyed an excellent reputation as a physician. Prior to the intentionally false adverse report described herein, Dr. Farmer had never had his medical privileges at any of the hospitals he had served suspended or revoked.

Additionally, there had never been any derogatory information filed against him with the KBOHA.

10.      Many years ago, Dr. Farmer applied for and received medical privileges to practice at the Hospital, which Dr. Farmer has maintained through the current day. As a provider with privileges to attend patients at the Hospital, Dr. Farmer reasonably relied upon the promises and representations contained in the 2013 properly enacted Medical Staff Bylaws, and by the earlier iterations of those Bylaws as they were properly amended from time to time.

### Due Process Rights under the Properly Enacted Medical Staff Bylaws

11.      Among other things, the properly enacted Medical Staff Bylaws provide a procedural protocol to be followed when there is a report, investigation, or peer review finding that implicates a member of the Hospital's medical staff.

12.      Specifically, Article IV, Section H.1, of the properly enacted Medical Staff Bylaws states that:

> When any practitioner receives notice of a recommendation by the Credentials Committee that, if ratified by decision of the Board of Directors, will adversely affect his appointment to or status as a member of the Medical Staff or his exercise of clinical privileges, **he shall be entitled to a hearing before the Medical Staff**. If the recommendation to the Credentials Committee **following such hearing** is still adverse to the affected practitioner, he shall then be **entitled to an appellate review** by the Board of Directors before the Board of Directors makes a final decision on the matter.

(emphasis added)

Section H.1. contains additional language requiring a hearing and appellate review prior to any final decision, in the event the Board acts without first receiving a recommendation from

4

the Credentials Committee. Either way, the physician is entitled to a hearing and appellate review of the results of the hearing prior to any final decision by the Board of Directors.

Finally, Section H.1. requires that "All hearings and appellate reviews shall be in accordance with the procedural safeguards set forth in Section H to assure that the affected practitioner is accorded **all rights to which he is entitled.** (Emphasis added).

Section H.2. requires the Administrator, in this case, defendant Todd Taylor, to give "prompt oral and written notice of an adverse recommendation or decision to any affected practitioner who is entitled to a hearing or an appellate review, by certified mail, return receipt requested." Section H.3. provides a window of between 14 and 30 days for scheduling the required hearing. Importantly, "The notice of hearing **shall state in concise language the acts or omissions with which the practitioner is charged, a list specific representative of charts being questioned, and/or the other reasons for subject matter that was considered in making the adverse recommendation or decision."** (Emphasis added.)

Section H continues with other specific procedural safeguards, to which the Bylaws confirm Dr. Farmer "is entitled." In all, the procedural safeguards to which Dr. Farmer fill most of pages 6 through 11 of the Bylaws.

**Ultra Vires 2017 Bylaws**

13.     As part of a bad faith conspiracy among defendants to deny Dr. Farmer his procedural due process rights contained in the 2013 properly enacted Medical Staff Bylaws, on June 22, 2017, immediately prior to the malicious conduct described herein, the Hospital's Board of Directors ("the Board"), at the behest of the Management Company and Dr. Carter, attempted to amend the Medical Staff Bylaws unilaterally. Among other things, the Management Company

and Dr. Carter wanted to amend Article IV, Section H. Specifically, the Management Company and Dr. Carter wanted to radically transform a physician's right to a hearing before his peers by adding the following two sentences to new Article IV, Section H.4:

> In the event there are not at least three voting members of the Medical Staff who are not subject to the adverse Board action then the response of the peer review organization shall be considered sufficient replacement for a hearing. The effected (sic) staff member shall submit a written plea to the Administrator for such peer review consideration and response.

14.    However, the unilateral attempt to amend was ineffectual.  Pursuant to Article XIII, Rule 39, of the properly enacted Medical Staff Bylaws, the medical staff bylaws may be amended only after notice is given at a regular or special meeting of the medical staff and two-thirds of the active medical staff vote in favor the amendment. Here, Article XIII's requirements were not satisfied, as the active medical staff, which includes Dr. Farmer, was not notified of, nor did it vote on, any proposed amendments to the properly enacted Medical Staff Bylaws. As a result, the Board's unilateral effort to amend the properly enacted Medical Staff Bylaws is *ultra vires* and any action based on the attempted amendment is also *ultra vires*.

### State and Federal Procedural Due Process Rights

15.    In addition to the properly enacted 2013 Medical Staff Bylaws, Kansas state law and federal law require that Defendants provide certain procedural protections with regard to reports affecting medical staff privileges and licensing. Under state law, the procedural protections afforded to medical staff include notice, a fair hearing, and the right to be heard before adverse action is taken. A similar requirement is codified in federal law, which requires that Defendants provide certain procedural protections with regard to reports affecting medical staff privileges and licensing. Under 42 U.S.C. § 11112 of the Health Care Quality Improvement

Act ("HCQIA"), a reasonable effort to obtain the facts of the matter and adequate notice and hearing procedures must be afforded to a physician involved in a professional review action.

16.     A peer review is intended to be a process in which health care providers objectively evaluate each other's performance to determine whether the provider in question has met accepted standards of care in rendering medical services.

17.     Peer review findings are typically evaluated on a scale of I to IV, with Level IV being the most serious. K.A.R. 28-52-4 Standard-of-care determinations, implementing K.S.A. 65-4921(f) ("Reportable incident").

18.     In Kansas, Level III and IV findings must be reported to the KBOHA. K.A.R. 28-52-4(b) and K.S.A. 65-4923

19.     K.S.A. 65-4923 provides that, when a "reportable incident" comes to the attention of the chief of the medical staff, the medical facility's chief administrative officer, or the Risk Manager, that person "shall refer the report to the appropriate executive committee or professional practices peer review committee which is duly constituted pursuant to the bylaws of the facility." Before reporting an incident to the appropriate state licensing agency, though, the committee must first find that the responsible provider "acted below the applicable standard of care which action had a reasonable probability of causing injury to a patient, or in a manner which may be grounds for disciplinary action by the appropriate licensing agency."

20.     Pursuant to Article X, paragraph 7, of the properly enacted Medical Staff Bylaws, the Risk Management Committee ("the Committee") is responsible for investigating reportable incidents and determining whether applicable standards of care have been satisfied. Such findings are to be forwarded to the Risk Manager, who has the responsibility of filing quarterly

reports with the Kansas Department of Health and Environment and specific adverse findings with state licensing agencies (like the KBOHA).

### Denial of Dr. Farmer's Procedural Due Process Rights

21.    Dr. Farmer serves on the Committee and as the Risk Manager.

22.    The Committee met on January 17, 2017, and March 22, 2017. At neither meeting were concerns or issues raised regarding Dr. Farmer's standard of care.

23.    Dr. Farmer is not aware of any meetings of the Committee occurring after the March 22, 2017, meeting.

24.    On July 22, 2017, Dr. Farmer received a letter from the Hospital's administrator, Todd Taylor, dated one day prior ("the July 21 letter"). According to the July 21 letter, "an independent peer review firm" had found Standard of Care Level III findings (Standards of Care with Injury Occurring or Reasonably Probable) for two of Dr. Farmer's charts. The letter went on to say that the peer review findings were reviewed and accepted by the Committee and forwarded on to the KBOHA. It also advised Dr. Farmer that, if he wanted to submit a response for "further consideration by the independent peer review firm," he needed to do so by August 4, 2017. Prior to the July 21 letter, Dr. Farmer had not been made aware that adverse findings had been found against him, much less given an opportunity to contest them.

25.    Upon receiving defendant Taylor's July 21 letter, Dr. Farmer contacted his counsel, who, on July 28, 2017, demanded of the Hospital that Dr. Farmer be afforded the due process rights to which, as the 2013 Bylaws said, he is "entitled." In addition, to pointing out the many procedural flaws in the Hospital's actions, Dr. Farmer's counsel requested a hearing pursuant to the Bylaws, and demanded of Mr. Taylor that he provide the review findings and the

Hospital Committee's agendas, minutes, notes, files and other matters related to its review of the two cases in question. Despite repeated follow-on requests, those review findings and other documents have never been provided to Dr. Farmer or his counsel, although a wholly inadequate summary (not the medical record or other documents requested) was belatedly provided by the Hospital's counsel.

26.     In Dr. Farmer's counsel's July 28, 2017 letter, Dr. Farmer's attorney also pointed out the defamatory falsehoods underlying the July 21 letter.

a.   For example, the Hospital supposedly found Dr. Farmer failed to meet the standard of care for a patient seen eight months earlier by the Hospital's nurse practitioner where Dr. Farmer was not the provider (or the supervisor of a physician's assistant) (nurse practitioners act independently; physician assistants act under the supervision of a physician). The nurse practitioner was acting independently pursuant to her nurse practitioner's license, and the Hospital failed or refused to submit the nurse practitioner to "peer review" for her conduct, for which she, not Dr. Farmer, was independently responsible.

b.   In a second example, interfering with Dr. Farmer's medical judgment as to medical necessity, a patient was admitted to the Hospital when Dr. Farmer was out of town by a practitioner who did not at the time have privileges to do so. On another occasion, following Dr. Farmer's nearly 40 minutes in the ER with a patient providing appropriate care, the Hospital claimed that Dr.

Farmer had not "stabilized" the patient per EMTALA[a] requirements, which the Hospital knows or should know cannot be used to establish a standard of care or the violation of a standard of care.

27.     The Hospital has not rescinded its report to the Kansas Board of Healing Arts, nor has the Hospital been forthcoming with the documents requested by counsel, thus necessitating the filing of this lawsuit to obtain Dr. Farmer's due process rights and protect his reputation.

28.     Defendants' disregard of Dr. Farmer's procedural rights was retaliatory, motivated by bad faith and malice. Since shortly after the Management Company and Dr. Carter took control of the Hospital in November 2016, Dr. Farmer has been an outspoken critic of how the two were operating the Hospital. Among other things, Dr. Farmer notified the Stafford County Commissioners about the abuse and waste that he had witnessed at the Hospital under the Management Company's and Dr. Carter's control. Prior to the incidents alleged in this Petition, Defendants were aware of Dr. Farmer's criticism.

29.     Rather than afford Dr. Farmer his due process rights, the Hospital claims it farmed out its version of events and some medical records to a Wichita physician to review, and claims this constitutes its "peer review" process. To properly respond to this sham peer review, Dr. Farmer needs the materials provided to the "peer review" physician by the Hospital, including but not limited to the medical records reviewed by the so called independent peer review firm, copies of all the documents reviewed and created by the so called independent peer review firm, documents relied on by the Committee in reaching its decision to accept the so

---

[a] The Emergency Medical Treatment and Labor Act, 42 U.S.C. 1395dd.

called independent peer review firm's findings, and the Committee's agendas, minutes, notes, and files related to when such findings were discussed.

30.     The Committee's purported acceptance of the so called peer review physician's adverse findings and forwarding of such findings to the KBOHA has already damaged Dr. Farmer's property and liberty interests in his medical license and professional reputation. As Defendants know, whenever a doctor seeks new or renewed licensure, privileges at another hospital (or healthcare facility), participation with an insurance payor or panel and/or a HMO, and new employment, a physician must: (1) answer numerous questions concerning challenges to his past record of medical competency (regardless of their truth or accuracy); (2) self-report any challenges to his medical qualifications by prior employers, insurance payors and panels, HMOs, licensing agencies, and prior hospitals where he had privileges, employment and participation; and (3) authorize the release, from such prior employers, hospitals, insurance programs, HMOs and licensing authorities, any adverse information concerning his medical competency, regardless of its truth or accuracy. Thus, without correction, Defendants have defamed Dr. Farmer's reputation resulting in actual and prospective injury and damage to Dr. Farmer.

### Claim I – Breach of Contract

31.     Dr. Farmer realleges and incorporates the allegations of the preceding paragraphs.

32.     The properly enacted Medical Staff Bylaws constitute a valid and enforceable contract between the Hospital and Dr. Farmer, as both parties agreed to be bound by those Bylaws, and, specifically, the due process requirements contained in those Bylaws.

33.     Pursuant to the properly enacted Medical Staff Bylaws, the Hospital promised to, among other things, provide Dr. Farmer with specific due process procedures before taking any action that could adversely affect Dr. Farmer's medical staff membership, medical privileges, or his license to practice as a physician.

34.     Through the actions described in this Petition, the Hospital breached the properly enacted Medical Staff Bylaws by not following the due process procedures contained therein before accepting the so called peer review physician's findings and forwarding such findings to the KBOHA.

35.     As a direct result of the breach, Dr. Farmer has been injured and damaged, has been irreparably harmed, and is threatened with additional and continuing irreparable harm which cannot be adequately compensated through mere money damages, and for which he has no adequate remedy at law.

### Claim II – Tortious Interference—Existing Contractual Relations

36.     Dr. Farmer realleges and incorporates the allegations of the preceding paragraphs.

37.     The properly enacted Medical Staff Bylaws, and specifically the due process requirements contained in those Bylaws, constitute a valid and enforceable contract between the Hospital and Dr. Farmer.

38.     Based on their relationship with the Hospital, the Management Company and Dr. Carter were aware of the contract between the Hospital and Dr. Farmer, and the due process requirements to which Dr. Farmer was entitled.

39.     Desiring to adversely impact Dr. Farmer's medical license, professional reputation, and relationship with the Hospital, the Management Company and Dr. Carter, in bad

faith and with malice, instigated and participated in a sham peer review process of two of Dr.
Farmer's patient charts that the Management Company and Dr. Carter knew did not demonstrate
that Dr. Farmer had provided substandard care. The Management Company and Dr. Carter then,
in bad faith and with malice, had the meritless findings of the sham peer review process
forwarded to the KBOHA.

40.     The Management Company and Dr. Carter had no legal justification for their
action.

41.     As a direct result of the Management Company's and Dr. Carter's tortious action,
Dr. Farmer has been injured and damaged, has been irreparably harmed, and is threatened with
additional and continuing irreparable harm for which he has no adequate remedy at law, and for
which damages do not provide a complete remedy.

### Claim III – Promissory Estoppel and Detrimental Reliance

42.     The Hospital's 2013 Bylaws promise and represent that a physician is absolutely
entitled to procedural due process (notice, hearing, right to review and present evidence,
appellate review) prior to the Hospital's taking any adverse action against the physician, such as
reporting the physician to the Kansas Board of Healing Arts.

43.     The Hospital's promise of procedural due process should reasonably be expected
to induce, and did in fact induce, action and forbearance over a number of years in that Dr.
Farmer continued serving on the Hospital medical staff, continued treating patients at the
hospital, continued responding to call at the hospital, and continued serving on risk management
committees and as chief of staff in reliance on the promise and the representation that prior to the
Hospital's (or anyone at the Hospital) taking any action adverse to Dr. Farmer's license, he

would be entitled to procedural due process, as promised and as represented by the 2013 Bylaws and those medical staff bylaws which preceded the 2013 Bylaws.

44.     Therefore, the promise and representation that Dr. Farmer is entitled to procedural due process as described in the 2013 Bylaws is binding on the Hospital because injustice can be avoided only by enforcement of the promise.

### Claim IV – Defamation and Injury to Privacy Interests

45.     Dr. Farmer realleges and incorporates the allegations of the preceding paragraphs.

46.     In or around July 2017, Defendants represented to the KBOHA, in a report concerning Dr. Farmer, that (a) the Committee had undertaken and accepted adverse peer review findings against Dr. Farmer; (b) the adverse findings were that, in November and May 2016, Dr. Farmer provided substandard care to two different patients in the emergency room of the Hospital ("the Patients"); and (c) that Dr. Farmer's treatment caused injury or was reasonably probable to result in injury for the Patients.

47.     By reporting Dr. Farmer to the KBOHA, Defendants made it appear that they had properly conducted a peer review and held the requisite committee meeting when in fact they had not.

48.     Defendants knew, at the time that the peer review investigation was allegedly conducted and the report submitted to the KBOHA, that the allegations against Dr. Farmer were false and without a basis in fact because Dr. Farmer's treatment of the Patients did not fall below acceptable standards of medical care.

49.     Defendants further knew that Dr. Farmer had not been provided with an opportunity to confront or challenge the allegations against him.

14

50.     Since Defendants' report to the KBOHA, Defendants' false and defamatory allegations have been republished to others in the Stafford County community.

51.     Defendants' false and defamatory allegations against Dr. Farmer are the subject of future republication to other licensing boards, future employers, healthcare insurance third party payers, HMO panels, and other entities within the national healthcare community, a fact of which Defendants were aware.

52.     As a direct result of Defendants' defamation, Dr. Farmer has suffered injury and damage to his reputation and privacy interests, actual economic damage, has been irreparably harmed, and is threatened with additional and continuing irreparable harm.

### Claim V – Retaliation

53.     Dr. Farmer realleges and incorporates the allegations of the preceding paragraphs.

54.     To protect public health and the general welfare, Dr. Farmer notified members of the Stafford County community, including the Stafford County Commissioners, of the abuse and waste that was occurring in the Hospital while under the Management Company's and Dr. Carter's control.

55.     Defendants were aware of Dr. Farmer's actions, which are protected by the United States Constitution and Kansas public policy.

56.     Based on Dr. Farmer's actions, and their desire to retaliate against Dr. Farmer for taking such actions, Defendants instigated and participated in a sham peer review process of two of Dr. Farmer's patient charts that Defendants knew did not demonstrate that Dr. Farmer had provided substandard care. Defendants also forwarded to the KBOHA a report that it knew contained allegations that were meritless.

57.     As a direct result of Defendants' retaliatory actions, Dr. Farmer has been injured and damaged, has been irreparably harmed, and is threatened with additional and continuing irreparable harm.

### Claim VI – Violation of Free Speech

58.     Dr. Farmer realleges and incorporates the allegations of the preceding paragraphs.

59.     The Hospital is a public, tax-supported hospital pursuant to K.S.A. 19-4601 et seq. The Hospital is owned and operated by Stafford County, a political subdivision of the State of Kansas. As such, actions of the Hospital are state actions that are subject to the provisions of the First Amendment of the United States Constitution and 42 U.S.C. § 1983.

60.     By notifying members of Stafford County, including the Stafford County Commissioners, of the abuse and waste that was occurring in the Hospital while under the Management Company's and Dr. Carter's control, Dr. Farmer was engaging in protected speech.

61.     Dr. Farmer's speech regarding the Hospital and its current management was of public concern.

62.     Based on Dr. Farmer's speech regarding the Hospital and its current management, the Hospital instigated and participated in a sham peer review process of two of Dr. Farmer's patient charts that were known not to demonstrate that Dr. Farmer had provided substandard care. The Hospital also forwarded to the KBOHA a report that it knew contained allegations that were meritless.

63.     As a direct result of the Hospital's actions, Dr. Farmer's State and Federal Constitutional free speech interests have been injured and damaged, and Dr. Farmer has been irreparably harmed, and is threatened with additional and continuing irreparable harm.

### Claim VII – Violation of Procedural Due Process Rights

64.     Dr. Farmer realleges and incorporates the allegations of the preceding paragraphs.

65.     The Hospital is a public, tax-supported hospital pursuant to K.S.A. 19-4601 et seq. The Hospital is owned and operated by Stafford County, a political subdivision of the State of Kansas. As such, actions of the Hospital are state actions that are subject to the provisions of the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983.

66.     Dr. Farmer has been duly licensed to practice medicine by the KBOHA. Dr. Farmer has a property and liberty interest in not having his medical license and professional reputation marred by meritless and malicious allegations being filed with the KBOHA.

67.     In light of his valuable property and liberty interests related to his unmarred medical license and professional reputation, Dr. Farmer was entitled to a fair hearing and the ability to present evidence to rebut any allegations against him before such allegations were reported to the KBOHA—opportunities which Dr. Farmer did not receive.

68.     As a direct result of the Hospital's actions, Dr. Farmer has been denied his Fifth and Fourteenth Amendment due process rights, the result of which is that he has been injured and damaged, has been irreparably harmed, and is threatened with additional and continuing irreparable harm.

### Prayer for Relief

WHEREFORE, Plaintiff respectfully requests the following relief:

A.     Issuance of a temporary, preliminary, and permanent injunction against Defendants:

17

      1.     Directing Defendants to immediately rescind and withdraw from the KBOHA Defendants' improperly submitted findings;

      2.     Directing Defendants to provide medical records involved in the so called independent peer review firm's findings, copies of all of the documents reviewed and created by the so called independent peer review firm, documents relied on by the Committee in reaching its conclusions the so called independent peer review firm's findings, and the Committee's agendas, minutes, notes, and files related to when such findings were discussed;

      3.     Prohibiting Defendants from suspending Dr. Farmer's medical staff privileges;

      4.     Prohibiting Defendants from further violating Dr. Farmer's constitutional rights.

      5.     Requiring Defendants to specifically perform the requirements of the Bylaws, and provide Dr. Farmer with his procedural due process rights.

      6.     Prohibiting Defendants from altering or destroying any physical or electronic documents or records relating to or touching upon the issues raised by this Petition.

      B.     Final judgment in favor of Dr. Farmer against Defendants in an amount yet to be determined, including all actual, incidental, compensatory, consequential, and punitive damages, along with all costs and expenses of suit, including reasonable attorneys' fees;

      C.     All other and further relief to which Dr. Farmer may be entitled in law and equity.

Respectfully submitted,

FOULSTON SIEFKIN LLP
1551 N. Waterfront Pkwy., Ste. 100
Wichita, KS 67206-4466
Dir. Tele: 316.291.9530/Fax: 866.346.1938


By:    /s/ Gary L. Ayers
       Gary L. Ayers, S. Ct. No. 10345
       gayers@foulston.com
       316.291.9530
        /s/ Clayton J. Kaiser
       Clayton J. Kaiser, S. Ct. No. 24066
       ckaiser@foulston.com
       316.291.9539

ATTORNEYS FOR PLAINTIFF

19